O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID SCHAFER,                                )        CASE NO. CV 09-07670 RZ
                                              )
                    Plaintiff,                )
                                              )        MEMORANDUM OPINION
        vs.                                   )        AND ORDER
                                              )
MICHAEL J. ASTRUE, Commissioner               )
of Social Security,                           )
                                              )
                    Defendant.                )
                                              )

            Plaintiff David Schafer, afflicted with bad feet and having been diagnosed as
having a schizoaffective disorder, complains of the Social Security Commissioner's
decision denying his application for disability benefits.   The Court agrees with the
Commissioner that substantial evidence supports the finding that Plaintiff could perform
work at the medium level of exertion.  Plaintiff's prior work as a carpenter was medium-
level work, and his work history indicates that he apparently performed that work
notwithstanding having the severe impairment involving degenerative changes of his feet.
[AR 67]  Plaintiff's argument that there is no evidence in support of the Administrative
Law Judge's finding as to his capacity also founders on the fact that it is Plaintiff's burden,
not the Commissioner's, to demonstrate that he qualifies for disability through the first four
steps of the mandated sequential evaluation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Accordingly, there is no merit to this challenge to the Commissioner's decision.

The Court agrees with Plaintiff as to his mental impairment, however. Four different doctors stated that, as a result of Plaintiff's mental impairments, Plaintiff could not work. The Administrative Law Judge referenced no doctor's opinion that Plaintiff *could* work. In the face of this uniformity of medical opinion about Plaintiff's capacity, it is striking that the Administrative Law Judge nevertheless concluded that Plaintiff could perform a regular full-time job, so long as Plaintiff did not have to interact with the public. [AR 22] The record contains no support for this finding.

When, as here, a treating physician's opinion is uncontradicted, the Administrative Law Judge may reject it only if she provides clear and convincing reasons for doing so, and this is true not only as to the doctor's medical opinion, but also as to the doctor's ultimate opinion as to whether a claimant is disabled. *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). The reasons the Administrative Law Judge gave for rejecting the physicians' opinions do not meet this stringent standard.[1]

Dr. Onglao, Plaintiff's primary physician, stated that Plaintiff could not work from 2/10/06 to 12/30/06. [AR 125] This opinion the Administrative Law Judge rejected because it covered a period less than the 12 months that Social Security law requires. [AR 18] When, in the midst of this period, Dr. Onglao filled out another form, this time stating that Plaintiff could not work from 8/24/06 to 8/24/07 [AR 118] — thus, in total, Dr. Onglao opined that Plaintiff could not work for a period of 17 months — this time the Administrative Law Judge said that the form was brief and did not contain any findings, and was not supported by any clinical findings. [AR 19] This certainly was not clear and convincing; Dr. Onglao's notes contain frequent references to medication adjustments, and

---

[1]     "Clear and convincing" is one of the highest standards of persuasion in the civil law context. Clear and convincing evidence, for example, is evidence that makes a fact highly probable. *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984); 9th CIR. CIV. JURY INSTR. 1.4 (2007). This is a standard that is higher than a "preponderance of the evidence" standard. *Id.* Thus, to reject an uncontradicted treating physician's opinion on the basis of clear and convincing reasons, there must be reasons that make the rejection highly probable, not just arguable.

to how Plaintiff is doing on various medications and with respect to various symptoms. They frequently reference Plaintiff's schizoaffective disorder.

Dr. Onglao was not alone. Dr. Wakefield had seen Plaintiff admittedly intermittently, in the 1990's and then not again until 2006. [AR 165] Still, he was struck by Plaintiff's inability to function, stating that "Patient will never be able to perform or hold a job" [*id*.], and finding Plaintiff markedly limited in numerous categories of functioning. [AR 168-69] This opinion the Administrative Law Judge disbelieved largely because it contained within it a current GAF rating of 10, which the Administrative Law Judge did not believe since such a low rating was so rare. [AR 20] Usually in this Court the Commissioner is at pains to argue that the GAF is not a useful or accurate measurement of Social Security disability, and the Court finds it surprising that here the Commissioner relies on it for his purposes. The Commissioner also notes that Dr. Wakefield reported side effects from Plaintiff's medications, but does not say that not all the medications produced side effects, and does not explain the impact of the existence of side effects. In a case of mental impairments, one would think that the presence of side-effects is a barometer of the disability, not a reason for discrediting a physician's opinion, for it shows that a claimant's impairments are not so easily brought under control.

Like Dr. Onglao and Dr. Wakefield, Dr. Tacata also stated that Plaintiff could not work. The Administrative Law Judge discounted the first such statement on the grounds that it was made the first time that Dr. Tacata saw Plaintiff, and that it "appears to be an opinion simply to help the claimant avoid repayment of a federal loan, because there is no discussion of clinical findings or the basis for the conclusion." [AR 19]

Presumably, Dr. Tacata, like any other physician, took a history from Plaintiff, and reviewed materials from the referring physician, Dr. Onglao, and did not simply make up her assessment out of thin air. The notion that a physician would certify a medical opinion, on a form that warns that false statements or misrepresentations can bring fines, imprisonment or both, and would do so to help the claimant avoid repayment of a federal loan, and without a belief in the veracity of the opinion, is quite insulting to the doctor. It

also is inconsistent with the ruling in *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996), that an Administrative Law Judge may not assume that a doctor routinely lies to assist his patient in obtaining public benefits. Finally, the fact that Dr. Tacata did not discuss clinical findings as the basis for the conclusion cannot serve to undermine the conclusion; the form did not require the doctor to provide such findings. [AR 162]

Dr. Tacata continued to treat Plaintiff for some time, and continued to opine that Plaintiff could not work. Thus, on a form in which she stated that Plaintiff had been compliant with treatment, and had a good prognosis so long as he remains clean and sober, Dr. Tacata nevertheless rated Plaintiff only fair to poor in two categories (understand, remember and carry out complex instructions; and understand, remember, and carry out simple instructions), and poor in the other four categories (maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; respond appropriately to changes in a work setting). [AR 156] In short, Dr. Tacata *continued* to indicate that Plaintiff was not capable of full-time work. In her reporting of this visit, the Administrative Law Judge referenced the prognosis, but not the doctor's assessment of Plaintiff's ability to function. [AR 20] The Administrative Law Judge also mentioned a later report from Dr. Tacata, in which Plaintiff appeared to show some improvement in some areas [AR 20, referencing AR 150 (erroneously referred to as a report from April 2007, rather than September 2007)], but that report did not contain any analysis of Plaintiff's ability to function.

A fourth physician, Dr. Buttar, examined Plaintiff in 2008 and also gave his opinion that Plaintiff could not work; he said that Plaintiff required constant care. [AR 180] The Administrative Law Judge rejected this opinion too; this one, she said, conflicted with Dr. Buttar's initial assessment of mild impairment, as reflected in a GAF of 60, and because Dr. Buttar only had seen Plaintiff twice at the time he made his judgment. [AR 20] A GAF of 60 reflects a moderate impairment, not a mild one; it is the upper end of a category described as involving moderate symptoms or moderate difficulty in social,

occupational, or school functioning.  AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (FOURTH EDITION) (DSM-IV) (1994) at 32.[2]  Dr. Buttar rated Plaintiff as markedly limited in most areas of functioning [AR 176-78], but the Administrative Law Judge did not discuss these ratings.  Perhaps the fact that Dr. Buttar saw Plaintiff only twice would have made his opinion less persuasive than that of other physicians who had seen Plaintiff more regularly, except that the opinion was the same:  Plaintiff could not work.

The Administrative Law Judge picked a few comments out of some of the reports, and went out of her way to reject the unanimous opinion of four different physicians about Plaintiff's inability to work.  It was error to reject their opinions, and there was no clear and convincing reasons to do so.  There was no evidence in support of the Administrative Law Judge's contrary finding that, despite his schizoaffective disorder, Plaintiff retained the capacity to work.

Given the unanimity of opinion, and the absence of any contrary opinion, nothing would be served by remanding this matter for further development of the record.  *Schneider v. Commissioner of the Social Security Administration*, 223 F. 3d 968, 975 (9th Cir. 2000) (*citing Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Accordingly, the Commissioner's decision is reversed, and the matter is remanded for an award of benefits.

DATED:   July 29, 2010

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE

---

[2]     The Administrative Law Judge has taken a curious approach to the GAF scale in this opinion.  As noted earlier, she appeared to accept the validity of the scale when criticizing Dr. Wakefield's application of it.  She did not mention  Dr. Tacata's assessment of a GAF of 45 (serious symptoms or any serious impairment in social, occupational, or school functioning) made on Dr. Tacata's July 2, 2007 assessment [AR 159], and she appears to accept Dr. Buttar's assessment of a GAF of 60 as being meaningful, while simultaneously stating that his concurrent opinion that Plaintiff cannot work is not valid because Dr. Buttar only had seen Plaintiff twice.